ON REHEARING.
Thomson, J.,
delivered the opinion of the court.
It is contended in support of this petition for rehearing, that our decision is in conflict with ■ the decision of the Supreme Court, in the case of D. C. I. & W. Co. v. Middaugh, 12 Colo. 434. I do not think that decision has anjr application whatever to this case. That was an action for damages occasioned by water percolating through the banks and bot-' tom of the defendant’s canal, under, through and upon the-, lands of the plaintiff. It appeared from the pleadings that at the time the canal was constructed, a proceeding was instituted by the defendant in the county court of Arapahoe county, to condemn a right of way for its canal over the plaintiff’s lands, in which there was judgment of condemnation, and an award to the plaintiff of $2,163.75 for the land-taken, and $1,500 as damages to the land not taken. These sums were accepted by the plaintiff. The amount of- the award was in excess of the jurisdiction of the county court; but the supreme court held that the plaintiff, by accepting and retaining the money, estopped himself from questioning the validity of the judgment; and treated the proceeding as if it had been conducted in a court of competent jurisdiction. The law governing condemnation proceedings is exhaustively discussed by Mr. Justice Hayt who delivered the opinion, and the conclusion reached that all damages consequential upon seepage from the canal, and not resulting from its negligent, or unskillful, construction or use, were or should have been- included in the award; and were therefore by the judgment in *352 condemnation res acljúdicata. This conclusion is expressly' based upon the provision of the statute, that in condemnation proceedings, the owner, or those interested in the real estate taken, shall be awarded damages, not only for the land or property taken, but also the damages, if any, to the residue of the- land or property. The utmost extent to which the decision goes is that by virtue of the language of the statute, all the damages, present and prospective, that are the natural, necessary or reasonable incident of the improvement, will be conclusively presumed to have been assessed in the condemnation proceeding, and cannot be re-litigated.
The feature,of condemnation does not exist in the case at bar; and the - presumption by which a judgment in a condemnation proceeding concludes the parties and the court, is not present. When the Home Supply Ditch was constructed, a contract was entered into between the Home Supply Ditch Company and the plaintiff, in reference to his compensation and damages, for the construction of that ditch across his land. The contract does not appear to have been in writing. Of course, what its terms were, whether these damages were included in it, and whether it was carried out, were questions of fact to be determined upon the evidence. It could not bind the parties except as to the matters embraced in it, and what those were could be ascertained only by an investigation of the facts.
The differences between the parties on account of the con- ■ struction of the Lake ditch, were submitted to arbitrators. The agreement of arbitration, and the award, are as follows:
“AGREEMENT TO ARBITRATE.
“ Whereas, a controversy exists between the above named, The Consolidated Home Supply Ditch and Reservoir Company, a corporation duly organized and existing under and' by virtue of the laws of the state of Colorado, and Oliver T. Hamlin, which controversy may properly be the subject of a civil action between said parties, and
“Whereas, the said controversy relates to the amount of' *353 damages resulting to the said Oliver T. Hamlin by the reason of the construction of a certain irrigating ditch called the “Lake Ditch” on and through the following described premises of the said Hamlin by the said The Consolidated Home Supply Ditch and Reservoir Company, that is to say: The right of way for the said ditch through the east half, of the south-west quarter of section thirty-four, township five north, of range sixty-nine west; the south-east quarter of the same section, the south half of the north-east quarter of same section, and the south-east quarter of the north-west quarter same section, all in Larimer county, Colorado.
“Also damages for the condemnation of a basin or lake called the Godwin lake, and the land upon which said lake is located, owned by the said Hamlin. Said lake located upon the following described lands ; part of the south half of the south-west quarter, section number thirty-four, township five north of range sixty-nine west, the north-east quarter of the north-east quarter of section number four, and the north-west quarter of the north-west quarter of section number three, township four north of range sixty-nine west, in Larimer county, Colorado. Said basin more fully shown by plat thereof attached and made a part of this contract, marked exhibit ‘ A ’ as well as plat of line ditch.
“ It is therefore fully agreed by the said The Consolidated Home Supply Ditch and Reservoir Company, and Oliver T. Hamlin that they hereby submit all matters and all matters of difference above mentioned in relation to the said right of way and said reservoir, to the following named arbitrators, that is to say: James Sullivan, John Hahn and Warren Blinn, who are to meet for said purpose at the office of James M. Aldrich, in the town of Loveland, Larimer county, Colorado, at 10 o’clock, A. M., on the 9th day of November, A. D. 1883, and they agree to abide the award of said arbitrators, and that the award of the said arbitrators, when made, may be filed by the successful party, with the clerk of the district court of Larimer county, Colorado, in the second judicial *354 district of said state, as a basis of a judgment, and that an execution may be issued for its collection.
“In testimony whereof, the said The Consolidated Home Supply Ditch and Reservoir Company has caused its corporate name to be hereto signed by its president, and its corporate seal to be hereto affixed by its secretary, and the said Oliver T. Hamlin has hereunto subscribed his name, this 7th day of November, A. D. 1883.
“The Consolidated Home Supply Ditch and Reservoir Company.
“ By C. J. Chapman, as President, [seal] “Oliver T. Hamlin.
“Attest: E: S. Allen.
“ AWARD.
“ We, the undersigned, arbitrators .appointed by the submission hereto annexed, having met at the office of James M. Aldrich in the town of Loveland, at 10 o’clock A. M., Friday, November 9, 1883, and after having been duly sworn, we proceeded to hear the allegations, evidence and arguments of the parties, and after hearing the same, and being fully advised in the premises, to make the following award:
“1. We award to Oliver T. Hamlin as damages for the right of way for the ditch described in the contract hereto attached, fifty-two feet wide along the line thereof, as now surveyed, and marked by furrows, five hundred and sixty dollars.
“2. We award to the said Hamlin as damages for the said lake taken, described in the contract hereto attached, two hundred dollars.
“3. We make a total award to the said Hamlin for all damages, and pay of arbitrators, seven hundred and sixty-nine dollars, this November 9, 1883.
“ The said award shall be binding upon the said company when the said Hamlin shall cause to be deeded to said company the title to said right of way, and a deed to the right of way through the land known as the Godwin lake, together *355 with a release and conveyance to said company by the God1win Reservoir Company, of all its rights and franchises.
“James Sullivan,
“John Háhn,
“ Warren Blinn.”
From the statement of the controversy in the agreement, it seems reasonably clear that the difference between the parties was concerning the right of way through the plaintiff’s land and the Godwin lake or reservoir, which it appears had already been appropriated by the defendant. But the submission itself is explicit upon the subject. It submits to the arbitrators the matters of difference in relation to the right of way and the reservoir, and no other matters. The damages awarded are for the right of way and the lake, and nothing else. The question of damages to the residue of the land, was not submitted or passed upon. It probably did not occur to the parties that the remainder of the land would ever sustain any injury in consequence of the ditches, because, as yet, there was nothing to indicate it. The seepage which occasioned it did not commence until 1885. The arbitration proceedings therefore present no obstacle to a recovery by the plaintiff in this action.
As far as the ditches are concerned, it is clear from the plaintiff’s testimony that there was no negligence in their construction ; and there is no evidence of their subsequent negligent management; but the question of negligence is not in this case, and all allegations concerning it in the complaint may be rejected as surplusage.
I think the evidence of the diminished value of the land, in consequence of the seepage, was properly received. Damages occasioned,by a nuisance which is not of a permanent character, are measured by the loss suffered before the commencement of the suit; but where it is permanent, all damages resulting from it are recoverable in one action ; and the diminished value of the property affected by it is their proper measure. It is perhaps not always easy to make the distinc *356 tion; but the court, in Town of Troy v. Cheshire R. R. Co., 3 Fost. (N. H.) 83, lays down the following rule, which seems to me to be founded in reason, and which can be readily applied to this case. It is as follows:
“ Wherever the nuisance is of such a character, that its continuance is necessarily an injury, and where it is of a permanent character, that will continue without change from any cause but human labor, there, the damage is an original damage, and may be at once fully compensated, since the injured person has no means to compel the individual doing the wrong, to apply the labor necessary to remove the cause o£ injury, and can only cause it to be done, if at all, by the expenditure of his own means.”
See also Powers v. City of Council Bluffs, 45 Iowa, 652. The ditches in question are necessary to render the land through which they pass productive. The country, requires them, and it is presumed that they will be maintained for an indefinite period of time. The evidence is that they were constructed in the ordinary and. usual manner, and that the seepage is a necessary result of the character of the land. The seepage will therefore continue, and the same injury result from it, as long as the ditches are Used. The cause of the injury is permanent, and therefore the injury itself is permanent. The evidence of the diminution in the value of the land was properly received; the instructions submitted the question involved fairly to the jury; and the verdict must be assumed to include the entire damage sustained, so that the plaintiff will be entitled to no further action by reason of a continuance of the nuisance. I think the judgment was rightly affirmed.